IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.      )
TYRONE HARVEY #K55075,                )
                                      )
                Petitioner,           )
                                      )
    v.                                )   No.   03 C 3855
                                      )
NEDRA CHANDLER,                       )
                                      )
                Respondent.           )

## MEMORANDUM ORDER

On May 28, 2003 Tyrone Harvey ("Harvey") filed a Petition
for Writ of Habeas Corpus ("Petition") under 28 U.S.C. §2254[1] to
challenge his August 22, 1998 state court conviction of first-
degree murder, on which he is serving a 40-year sentence.   In
compliance with Rule 4 of the Rules Governing Section 2254 Cases
in the United States District Courts ("Section 2254 Rules"), this
Court promptly reviewed the Petition and its attachments.

Because the Petition posed issues that could not be
evaluated from that filing alone, this Court's threshold review
prompted the issuance of a June 11, 2003 memorandum order that
directed then Warden Jerry Sternes (for convenience the term
"Respondent" refers both to him and to present Warden Nedra
Chandler) to file a responsive pleading as called for by Section
2254 Rule 4.   With that filing now in hand, it is clear that the

---

[1]  All further references to Title 28's provisions will
simply take the form of "Section --."  All "Ex." references are
to volumes of the trial transcript, which is itself Ex. O to
Respondent's submission.

Petition is amenable to disposition on the papers, without the need for an evidentiary hearing (see Section 2254 Rule 8(a)). For the reasons stated in this memorandum opinion and order, the Petition is denied.

## Harvey's Trial

Under Section 2254(e)(1) all state courts' findings of fact are presumptively correct in any federal habeas proceeding. In that respect this opinion reproduces verbatim the recitation of facts from the Illinois Appellate Court's unpublished September 22, 2000 order in its Case No. 1-98-4412, which denied relief on direct review of Harvey's conviction:

> On October 18, 1994, Robert Jones was fatally shot in the head at the Rockwell Gardens housing project, located at 2514 West Van Buren Street in Chicago. Defendant, who held a supervisory position with the service which provided security at this housing project, entered the building and spoke with Jones. A security guard heard three gunshots, found Jones' body near the elevator lobby and saw defendant leave. Jones' friends saw defendant leave the building carrying a gun just after the shots were fired.

At Harvey's trial in the Circuit Court of Cook County, it was the prosecution's theory that Jones (a member of the Vice Lords street gang) was killed by Harvey (a member of the Nation of Islam) in retaliation for an attack by Vice Lords members on a Nation of Islam member two days earlier. To that end the prosecutor called Reginald Rush ("Rush")(Ex. H 112-71) and Jasiri

Muhammad ("Muhammad")[2] (Ex. H 181-267), two Nation of Islam members who had made statements before a grand jury in 1997 that implicated Harvey in the murder. At trial, however, each of them either denied or testified that he didn't remember making those statements.

But the key to the prosecution's case was the testimony of Darvon Harris ("Harris")(Ex. I 191-251), a member of the Vice Lords and friend of Jones who testified that immediately after the shooting he saw Harvey run from the housing project with a gun in his hand. By contrast, Harris' wife Angelique testified for the defense (Ex. J 12-29), stating that while she saw Harvey and another individual running from the building, Harvey was not holding a weapon.

After the jury retired to deliberate, the court received four written questions. Three questions asked for transcripts of trial or grand jury testimony, and the other asked for an explanation of "reasonable doubt." To each of those questions the trial judge responded:

> You have received all of the evidence and instructions
> in this case. Please continue to deliberate until you
> have reached a verdict.

Two other notes received by the court during deliberations indicated the jurors were sharply divided. In response the trial

---

[2] At the time of Jones' death in 1994, Muhammad was known as Jasiri Lane, but he changed his name legally some time before Harvey's trial (Ex. H 182).

3

judge called the jury into the courtroom and instructed the jurors, pursuant to the command of <u>Allen v. United States</u>, 164 U.S. 492, 501-02 (1896), that it was their duty to "consult with one another and communicate with a view to reaching an agreement if [they could] do so without violence to individual judgment" (Ex. J 136).

After the jury again retired to deliberate, the court received this note from juror Anita Hooper ("Hooper"):

> I Anita Hooper [am] one of the Jurors. Your Honor I have found myself unable to come to and [sic] unanimous decision with the other jurors. Everyone has become hostile because of my lack of evidence proven to me. I don't want to be the reason for the other jurors having to stay here. I can stay if you would like me to but please allow the other people [to] go. I've tried to see their way but then what would I be if I can't stand on my belief for lack of evidence.

But shortly thereafter the jury notified the court that it had reached a verdict. Harvey was found guilty of first-degree murder, and when polled individually each juror--including Hooper--voiced his or her assent to that guilty verdict.

## Procedural History

After he was sentenced Harvey appealed to the Illinois Appellate Court for the First District, raising two issues: (1) whether the jury verdict was the result of duress and coercion and (2) whether trial counsel was ineffective for failing to move for a mistrial when the judge received the note from juror Hooper. After the Appellate Court affirmed his conviction Harvey

4

petitioned for leave to appeal to the Illinois Supreme Court, raising only the issue of juror coercion. That petition was denied on January 29, 2001.

On July 28, 2001 Harvey filed a pro se petition for relief in the Circuit Court under the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1), advancing numerous ways in which his constitutional rights had assertedly been violated: in addition to (1) the evidence as to his guilt having been insufficient, the trial judge had erroneously (2) denied trial counsel's challenge under Batson v. Kentucky, 476 U.S. 79 (1986) to the prosecution's use of peremptory challenges to African-American prospective jurors, (3) admitted testimony offered by the prosecution to discredit Muhammad's denial of his statements before the grand jury, (4) denied the jury's request for a definition of "reasonable doubt," (5) denied the jury's request for transcripts and (6) refused to investigate the disappearance of certain jurors' notes following the first day of testimony; (7) Harvey's conviction was the result of selective prosecution; (8) the prosecutor's closing argument was prejudicial; (9) the prosecution knowingly presented perjured testimony; and (10) Harvey's trial counsel was ineffective for failing to challenge jurors who were biased against the Nation of Islam. Finding the petition to be "frivolous and without merit," the trial judge denied it summarily.

After filing a notice of appeal on Harvey's behalf from that denial of post-conviction relief, his appointed appellate counsel moved to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987). Counsel's Finley brief explained that there were no viable issues for appeal, concluding (1) that Harvey's claims of substantive error were forfeited because they could have been raised on direct appeal but were not and (2) that his ineffective assistance claim did not meet the requirements of Strickland v. Washington, 466 U.S. 668 (1984). Harvey filed a pro se response to counsel's Finley motion, raising the same claims that he had set out in his post-conviction petition. In an unpublished September 26, 2002 order in its Case No. 1-01-4029, the Appellate Court (1) stated that it had "carefully reviewed the record" and "agree[d] with counsel's evaluation," (2) granted counsel's motion to withdraw and (3) affirmed the Circuit Court's denial of the post-conviction petition.

Harvey then sought leave to appeal that ruling to the Illinois Supreme Court. His pro se brief raised all of the issues included in his original post-conviction petition and additionally asserted that his post-conviction appellate counsel had failed to comply with Illinois Supreme Court Rule 651(c) in withdrawing from the case, thereby violating Harvey's rights to due process and equal protection in the post-conviction proceeding. Harvey's petition for leave to appeal was summarily

denied by the Illinois Supreme Court on February 5, 2003.

## Timeliness of the Petition

Because Harvey's Petition was filed considerably more than a year after his conviction became final, this Court must make a threshold determination as to whether it was timely. Section 2244(d)(1)(A), which applies here, requires that such a petition be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Because Anderson v. Litscher, 281 F.3d 672, 674-75 (7th Cir. 2002) teaches that the "time for seeking such review" includes the 90 day period during which a defendant may file a petition for certiorari in the United States Supreme Court, Section 2244(d)(1)'s one year period began to run on April 30, 2001 (90 days after the Illinois Supreme Court's January 29, 2001 entry of judgment rejecting the direct appeal). That being so, Harvey's May 28, 2003 Petition was obviously untimely unless the limitations period had been tolled by operation of Section 2244(d)(2), under which "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted...."

As stated earlier, Harvey's petition for state post-conviction relief was filed on July 28, 2001. That petition came just within the six month limitations period imposed by the

version of 725 ILCS 5/122 in effect at the time. That "properly filed" petition stopped 2244(d)(1)(A)'s one year clock after almost three months had elapsed after the April 30 deadline for seeking certiorari. Harvey's state post-conviction petition remained "pending" until the Illinois Supreme Court ultimately denied leave to appeal its dismissal on February 5, 2003 (see Fernandez v. Sternes, 227 F.3d 977, 980 (7th Cir. 2000), at which time the clock started again. Harvey filed the current Petition just under three months later, making it timely under the one-year limitation period prescribed by Section 2244(d)(1)(A) as expanded by Section 2244(d)(2).

## Harvey's Federal Claims

In this action Harvey advances ten claims of error as to his conviction and sentence, contending that those errors violated his rights to a fair trial, due process of law and equal protection of the laws as guaranteed by the Fifth, Sixth and Fourteenth Amendments. Those claims echo the ten grounds that Harvey had asserted in his pro se post-conviction petition in the state court.

## Procedural Framework

Before any federal court can address the merits of a Section 2254 petition, the petitioner must exhaust his state court remedies, "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights"

8

(<u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S.Ct 1347, 1349 (2004) (internal quotation marks omitted); see also Section 2254(b)(1)). But "where, as in this case, the petitioner has already pursued his state-court remedies and there is no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief,...but rather the separate but related doctrine of procedural default" (<u>Perruquet v. Briley</u>, 390 F.3d 505, 514 (7th Cir. 2004)). That doctrine, "grounded in considerations of comity and concerns for the orderly administration of justice" (<u>Dretke v. Haley</u>, 541 U.S. 386, 124 S.Ct. 1847, 1852 (2004)(internal quotation marks omitted)), provides a strong prudential reason for federal courts to avoid addressing a defaulted federal constitutional claim on habeas review.

Once barred on procedural default grounds, a claim will not be cognizable in a federal habeas proceeding unless the petitioner can clear one of two hurdles established by <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991):

> We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.

Any claims that manage to survive those threshold and intricate

9

procedural obstacles must then satisfy Section 2254's stringent

standards for granting habeas relief on claims that state courts

have considered and rejected on their merits. Here is section

2254(d):

An application for a writ of habeas corpus on behalf of
a person in custody pursuant to the judgment of a State
court shall not be granted with respect to any claim
that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of,
clearly established Federal law, as determined by
the Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

Because Respondent has argued that Harvey procedurally defaulted

all of his claims, this opinion turns to that subject.

## Procedural Default

Procedural default occurs either (1) when a state court has

declined to address a prisoner's federal claims because the

prisoner failed to meet an adequate and independent state

procedural requirement or (2) when a claim that could have been

but was not brought before a state court can no longer be

asserted in that forum (Coleman, 501 U.S. at 729-32; Conner v.

McBride, 375 F.3d 643, 648 (7th Cir. 2004)). Only the first

alternative is at issue here, given the identity of claims raised

in Harvey's unsuccessful state post-conviction petition and in

10

his Petition here. Hence federal habeas review is precluded only if the last state court rendering a judgment did so based on an adequate and independent state procedural requirement rather than on federal law (Harris v. Reed, 489 U.S. 255, 262 (1989)).

As already stated, Harvey first raised all of his present claims in his post-conviction petition under 725 ILCS 5/122-1. But Illinois law imposes narrow limits on such review (People v. West, 187 Ill.2d 418, 425, 719 N.E.2d 664, 669-70 (1999) (internal citations omitted)):

> The scope of the proceeding is limited to constitutional matters that neither have been, nor could not have been, previously adjudicated. Any issues which could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues which have been previously decided by a reviewing court are barred by the doctrine of res judicata.

Here all of Harvey's claims could indeed have been raised on direct appeal, so they are potentially subject to procedural default under Illinois law. But such a procedural default bars federal habeas review only if the last state court to address the claim "actually relied on that default as an independent basis for its decision" (United States ex rel. Hampton v. Leibach, 347 F.3d 219, 242 (7th Cir. 2003), citing Harris, 489 U.S. at 261-62). If by contrast the state court's resolution of a claim "fairly appears to rest primarily on federal law, or to be interwoven with the federal law" (Coleman, 501 U.S. at 735 (internal quotation marks omitted)), a federal court may address

11

that claim. For those purposes the relevant decision is that of the Illinois Appellate Court that granted appointed counsel's motion to withdraw and affirmed the Circuit Court's summary denial of Harvey's post-conviction petition.

Appointed counsel's <u>Finley</u> brief before the Illinois Appellate Court concluded that there were no meritorious issues for appeal. In that respect counsel first explained that all of Harvey's claims of substantive error could have been raised on direct appeal and that those issues "therefore would be waived or res judicata" in post-conviction proceedings. Next counsel stated that Harvey's ineffective assistance of trial counsel claim did not meet the familiar <u>Strickland</u> standard. In his pro se response Harvey repeated all of his claims and disagreed with counsel's assessment of their merit. When the Appellate Court then granted counsel's motion to withdraw and affirmed the denial of the petition, its order stated:

We have carefully reviewed the record in this case, the [<u>Finley</u>] brief and petitioner's <u>pro</u> <u>se</u> response in compliance with the mandate of <u>Finley</u> and agree with counsel's evaluation. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed and the judgment of the circuit court of Cook County is affirmed.

<u>Wilkinson v. Cowan</u>, 231 F.3d 347, 351 (7th Cir. 2000) has held that when as here the Illinois Appellate Court affirms the dismissal of a post-conviction petition and grants a <u>Finley</u> motion, its decision need not identify or discuss a particular

12

federal claim for its adjudication to be considered "on the merits." That is, a federal court should not presume that a decision rests upon an adequate and independent state ground simply because that decision does not discuss the merits of a federal claim. But Lewis v. Sternes, 390 F.3d 1019, 1031 (7th Cir. 2004)(emphasis added) has more recently explained the limited scope of the Wilkinson holding:

> At most, Wilkinson stands for the proposition that when a state appellate court elects to summarily affirm the judgment below without having invited the appellant to identify the issues he wishes to pursue on appeal, we will construe the affirmance to have reached the merits of each issue that the petitioner properly raised in the court below.

None of the issues that Harvey raised in his post-conviction appeal was "properly raised in the court below," for as already explained those issues could and should have been raised on direct appeal and are thus considered procedurally defaulted for purposes of Illinois post-conviction proceedings. As to such claims, neither the Circuit Court's summary denial of the post-conviction petition nor the Appellate Court's summary affirmance can fairly be presumed "to rest primarily on federal law, or to be interwoven with the federal law" (Coleman, 501 U.S. at 735).

To be sure, some factors that led the Wilkinson court to construe the summary affirmance in that case as reaching the merits of the petitioner's claim are suggested by the Appellate Court's statement that it "carefully reviewed the record" and its

13

outright affirmance of the dismissal of the petition, rather than expressly identifying a procedural ground. But the quoted language was employed only in stating that the court "agree[d] with counsel's evaluation" of Harvey's claims. And for all of those claims except the purported ineffective assistance provided by trial counsel, that evaluation was that they were "waived or res judicata." That, coupled with the fact that Illinois law clearly treats those claims as forfeited because Harvey failed to assert them on direct appeal, leads this Court to conclude that this is not a case in which there is a "good reason to question whether there is an independent and adequate state ground" (Coleman, 501 U.S. at 739) for the Appellate Court's decision as to all of Harvey's claims except ineffective assistance of trial counsel. In sum, all but one of the claims are procedurally defaulted and can be addressed by this Court only upon a showing by Harvey of cause for the default and prejudice as a result of the claimed constitutional violation.

Counsel's Finley brief did however address the merits of the ineffective assistance of trial counsel claim, and the Appellate Court's agreement with that evaluation must be viewed as being "interwoven with the federal law" (id. at 735). Hence that claim is therefore properly before this Court. But before this opinion addresses that one claim in Section 2254(d) terms, it will determine whether Harvey can escape the consequences of

14

procedural default as to the rest of his federal claims through either of the Coleman-identified routes.

## Cause and Prejudice

Coleman's first potential exception to a procedural bar rests on a showing of cause for the default and prejudice stemming from the constitutional violation. To establish cause, a petitioner must ordinarily demonstrate that some external impediment blocked the assertion of his federal claim in the state court (Murray v. Carrier, 477 U.S. 478, 488 (1986)).

To that end Harvey asserts that his failure to raise the procedurally defaulted claims on direct appeal was the fault of his appellate counsel. Ineffective assistance of counsel in violation of the Sixth Amendment may indeed constitute cause for excusing a procedural default (id.). But because the exhaustion doctrine requires "that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default" (id. at 489), "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted" (Edwards v. Carpenter, 529 U.S. 446, 453 (2000)). And as Lee v. Davis, 328 F.3d 896, 901 (7th Cir. 2003) has observed, "[t]he result is a tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice."

15

No problem of such entanglement exists here, though: Harvey briefly set out his ineffectiveness claim at each level of state post-conviction review by stating that "[a]ppellate counsel's failure to raise these claims on direct appeal satisfies the cause and prejudice standard." Because those post-conviction proceedings offered him the first opportunity to challenge the effectiveness of the counsel who served him on direct appeal, that claim was properly preserved. It therefore qualifies as cause for the procedural default of Harvey's nine claims of substantive error at trial.

Whether an ineffective assistance of counsel claim is asserted as an independent basis for relief or as cause for a procedural default, Strickland, 466 U.S. at 687 provides the standard by which counsel's conduct is evaluated:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable.

At the appellate level that standard is met where a petitioner demonstrates "(1) that his counsel's appellate performance fell below an objective standard of reasonableness, and (2) that counsel's deficiencies prejudiced the result of his appeal"

(Freeman v. Lane, 962 F.2d 1252, 1257 (7th Cir. 1992)). As to the first of those criteria, this Court is required "to compare the issue that was not raised in relation to the issues that were raised; if the issue that was not raised is both obvious and clearly stronger than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient" (Lee, 328 F.3d at 900-01 (internal quotation marks and citations omitted)). And prejudice--the second criterion--is in turn established if there is "a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised" (id. at 901).

In all events it must be remembered that federal judicial scrutiny of counsel's performance is highly deferential: "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (Strickland, 466 U.S. at 689). Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)(internal quotation marks and citations omitted) is exemplary of the strength of that presumption:

> Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun, of course....Genuinely strategic decisions that were arguably appropriate at the time, but with the benefit of hindsight, appear less than brilliant will not be second-guessed.

It will be recalled from the Procedural History section that Harvey's counsel on direct appeal raised just two issues, neither

17

of which has been presented here:

1. whether the jury's guilty verdict was the product of duress and coercion, violating Harvey's Sixth Amendment right to an impartial jury; and

2. whether trial counsel was ineffective for failing to move for a mistrial upon receipt of the note from juror Anita Hooper during deliberations.

To succeed on his present claim of ineffective assistance, Harvey must show that those two issues were pursued to the exclusion of issues that were both "obvious and clearly stronger." That calls for a seriatim consideration of the failure to raise each now-defaulted federal claim.

## 1. Sufficiency of the Evidence

Appellate counsel did not advance a general claim under Jackson v. Virginia, 443 U.S. 307, 318 (1979) that the record evidence could not reasonably support a finding of guilt beyond a reasonable doubt. But the barrier raised by Jackson is so high that counsel cannot be faulted for not having done so.[3]

Like federal courts, Illinois courts that address

---

[3] Habeas jurisprudence does not call for an evidentiary hearing to inquire into a lawyer's thought processes in shaping an appellate presentation. But all judges know--and all good lawyers should know--that presenting dead-bang losers as part of a submission to a court can often dilute the impact of whatever legitimate issues ought to be proffered for consideration (see, e.g., Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996) and cases cited there). No habeas court may properly fail to take into account the possibility of such appropriate strategic judgments.

18

sufficiency-of-the-evidence claims under <u>Jackson</u> have made clear that "a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses" (<u>People v. Cooper</u>, 194 Ill.2d 419, 431, 743 N.E.2d 32, 40 (2000)). Credibility judgments played a central role in Harvey's trial, with the jury hearing statements implicating Harvey in Jones' murder from various sources: both the grand jury testimony of Rush and Muhammad and the in-court testimony of Harris and (to a lesser extent) his wife Angelique. Because the jury obviously chose to credit those statements, and because Illinois law effectively insulates that choice from appellate review, counsel's decision to forgo the issue on appeal was not objectively unreasonable.

## 2. Use of Peremptory Challenges

After Harvey's trial counsel had raised a <u>Batson</u> challenge to the prosecution's use of peremptory strikes to remove two African-American women from the jury panel, the trial judge ordered the prosecution to provide a race-neutral reason for the strikes (Ex. G 158-62). In response the prosecutor explained (1) that the first potential juror had appeared to nod when defense counsel was speaking and that she lived near a mosque and (2) that the second potential juror appeared hesitant when asked if she could accept the testimony of gang members and also appeared confused when asked how many juries she had previously

served on. Although defense counsel argued that those explanations were pretextual, the trial judge disagreed and denied the Batson challenge.

Because the trial court is in the best position to evaluate the legitimacy of such explanations in a Batson hearing, under Illinois law "a trial court's determination with respect to a defendant's Batson claim is entitled to great deference and will be disturbed on appeal only if manifestly erroneous" (People v. Wiley, 165 Ill.2d 259, 274, 651 N.E.2d 189, 195 (1995)). Nothing in the record suggests that to be the case here . Again any failure on counsel's part to have presented the issue on appeal cannot be faulted in Sixth Amendment terms.

3. Admissibility of Impeachment Evidence

As for the admissibility of testimony from various witnesses offered by the prosecution to impeach Muhammad's testimony on the stand (in which he denied, or testified that he didn't remember, making statements contained in the transcript of his grand jury testimony), any decision to present the evidentiary rulings on appeal would have faced a steep uphill climb (People v. Illgen, 145 Ill.2d 353, 364, 583 N.E.2d 515, 519 (1991)(internal citations omitted)):

> The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision may not be overturned on appeal absent a clear abuse of discretion. Such an abuse of discretion will be found only where the trial court's decision is arbitrary, fanciful or unreasonable or

20

where no reasonable man would take the view adopted by
the trial court.

That hill clearly could not have been surmounted here.

On direct examination by the prosecution, Muhammad was asked
about a conversation he had with Assistant States Attorneys
Bernard Murray ("Murray"), Michael Rogers ("Rogers") and Laura
Forester ("Forester") earlier that same day. Muhammad testified
that he did not make statements incriminating Harvey during that
conversation (Ex. H 225-30). To rebut that denial, the
prosecution called Forester to the stand, and she testified that
earlier in the day Muhammad did indeed make various statements
incriminating Harvey in Jones's murder (Ex. I 34-38).

Harvey also complains about the testimony of Assistant
States Attorney John Lyke ("Lyke") (Ex. I 49-93), who testified as
to his interview of Muhammad only regarding the circumstances of
that interview and the circumstances surrounding Muhammad's grand
jury testimony--not to any statements that Muhammad actually
made. Detective Dennis Keane ("Keane") (Ex. H 19-44), whose
testimony Harvey also mentions as part of this claim, was called
to the stand before Muhammad and testified about the initial
investigation of Jones' murder.

Under Illinois law a party may impeach the testimony of its
own witness (Ill. S.Ct. Rule 238) and may do that through the use
of prior inconsistent statements where the witness' testimony is
detrimental to the position of that party (People v. Weaver, 92

21

Ill.2d 545, 563, 442 N.E.2d 255, 262 (1982)). Because Muhammad's testimony on the stand had that effect (he denied making statements that the prosecution contended he had made), the trial judge's admission of his prior inconsistent statements through Forester is surely not "arbitrary, fanciful or unreasonable" impeachment. Nor does the admission of Lyke's and Keane's testimony pose any problems of admissibility. All of that being so, the issue is not "obvious and clearly stronger" in comparison with the issues that were raised on appeal.

4. Refusal To Clarify "Reasonable Doubt" Instruction

So too the trial court's refusal to grant the jury's request for a definition of "reasonable doubt" could not be labeled as unreasonable, for Illinois law does not allow a judge to provide such an instruction (People v. Speight, 153 Ill.2d 365, 374, 606 N.E.2d 1174, 1177 (1992)). Once more the appellate counsel is not open to criticism in constitutional terms (or any other, for that mater).

5. Refusal To Provide Jury with Transcripts

As for the trial judge's refusal to provide the jury with the transcripts of grand jury and trial testimony on appeal, it is well-established under Illinois law that "[t]he decision whether to grant or deny a jury's request for transcripts of testimony rests within the sound discretion of the trial court and, unless there is an abuse of that discretion, the trial

22

judge's determination will not be disturbed on review" (<u>People v. Kliner</u>, 185 Ill.2d 81, 163, 705 N.E.2d 850, 891 (1998)). Given that highly deferential standard of review, the issue was not "clearly stronger" than those actually raised by appellate counsel, so that its omission from the appeal was not constitutionally suspect.

## 6. Failure To Investigate Disappearance of Juror's Notes

When on the second day of testimony the trial judge was unable to locate the notes a number of jurors had taken the day before, defense counsel moved for a mistrial. Harvey now argues that the disappearance of those notes and the trial court's failure to investigate "evinces an obvious prejudice by the trial judge against Petitioner where the judge previously upheld the prosecution's exclusion of a female African American from the jury simply because it was alleged that she was not paying attention." Because any claimed failure to "investigate the disappearance" of those notes does not of itself implicate any federal rights, for present purposes the claim must be viewed as one challenging the trial court's refusal to grant a mistrial as an infringement of Harvey's Sixth Amendment right to trial by a fair and impartial jury.

Whether to grant a mistrial is in the sound discretion of the trial court, to be exercised generally "only as the result of some occurrence at trial of such character and magnitude that the

party seeking it is deprived of his right to a fair trial"
(People v. Redd, 125 Ill.2d 252, 323, 553 N.E.2d 316,348 (1990)).
That cannot be said here such that the omission of that
contention from the issues on appeal could be labeled as
objectively unreasonable.

### 7. Selective Prosecution

Claims of selective prosecution do implicate the equal
protection component of the Due Process Clause, but they require
"proof that the decision to prosecute was based on impermissible
considerations such as race, religion, or the desire to penalize
the exercise of constitutional rights" (United States v. Peskin,
527 F.2d 71, 86 (7th Cir. 1975)). Nothing in the record supports
Harvey's contention that he was prosecuted because of his
membership in the Nation of Islam, so there would have been no
legitimate basis for advancing that argument on appeal.

### 8. Prosecutorial Remarks

Harvey claims the trial included a number of improper
prosecutorial remarks, particularly those involving the Nation of
Islam.   Illinois law (like federal law) holds "it is improper for
the prosecutor to do or say anything in argument the only effect
of which will be to inflame the passion or arouse the prejudice
of the jury against the defendant, without throwing any light on
the question for decision" (People v. Smith, 141 Ill.2d 40, 60,
565 N.E.2d 900, 908 (1990)). But even "[i]mproper remarks will

24

not merit reversal unless they result in substantial prejudice to the defendant, considering the context of the language used, its relationship to the evidence, and its effect on the defendant's rights to a fair and impartial trial" (id.).

Harvey first complains that the prosecutor's opening statements disparaged the Nation of Islam by implying that members of the group had unlawfully impeded the investigation of Jones' murder. When viewed in the context of the prosecution's theory of the case, however, those statements had the valid purpose of explaining the discrepancies in Rush's and Muhammad's testimony.

Next Harvey complains of "inculcating and incendiary remarks" made by the prosecutor during closing argument. For example, Assistant States Attorney Rogers said this:

Jasiri Lane and Joseph Butler give minimum information after they get caught in a lie and they run away and hide. Yes, they do come into the police department later after conferring with their fellow bow tie wearers.

After counsel objected to that characterization of members of the Nation of Islam, Rogers explained, "I do not attack the Nation of Islam, I attack some of the members of that group" (Ex. J-105).

While the pejorative reference to members of the Nation of Islam as "bow tie wearers" was certainly inappropriate, it could not have served as a basis for reversal on appeal absent a showing of substantial prejudice. Under that demanding standard,

25

the issue of improper prosecutorial remarks was neither obvious

nor clearly stronger than the issues that appellate counsel did

raise.

### 9. Use of Assertedly Perjured Testimony

Last among the asserted shortcomings of appellate counsel

was the prosecution's purported knowing use of perjured

testimony, a claim as to which the burden of proof lies with the

defendant (People v. Bassett, 56 Ill.2d 285, 293, 307 N.E.2d 359,

364 (1974)). But none of Harvey's contentions in that regard

survive scrutiny either.

First he claims that the introduction of the grand jury

testimony of Rush and Muhammad fits that description because that

testimony was coerced. Because nothing in the record besides

Rush's and Muhammad's bootstrapping statements could have

supported such a claim, counsel could not be labeled as

ineffective for failing to tender the argument on appeal.

Harvey also claims that Assistant States Attorney Lyke and

Detective Keane perjured themselves regarding their difficulty in

locating the individual then known as "Tyrone 4X" (Harvey

himself) because, as he states in an affidavit attached to the

Petition:

> If the police had really wanted to locate me it would
> have been easy for them to do so because at the time of
> the murder I (along with my then wife) then resided in
> the Rockwell Gardens Housing Project where the incident
> occurred, and, Chicago Housing Authority records will
> confirm this.

But that after-the-fact assertion (even assuming its accuracy arguendo) was not part of the trial record and hence--by definition--could not have been presented on direct appeal, the only context in which the issue arises here.

## Prejudice?

In sum, it cannot be said that appellate counsel's noninclusion of any of the nine defaulted claims was objectively unreasonable. Because counsel's performance was thus not deficient in Strickland terms, this opinion need not address the second prong of the Strickland test: whether any assertedly deficient performance impermissibly prejudiced the appeal. Harvey's inability to satisfy the two-part Strickland standard, and thus to establish "cause" for purposes of Coleman's "cause and prejudice" exception to the doctrine of procedural default, also obviates the need to address the "prejudice" prong of that inquiry.

## Fundamental Miscarriage of Justice

All that remains as to those nine claims, then, is to consider briefly whether Harvey can satisfy Coleman's other exception, under which the failure to address a procedurally defaulted claim would result in a "fundamental miscarriage of justice" (Coleman, 501 U.S. at 750). Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003), citing and quoting Schlup v. Delo, 513 U.S. 298 (1995), has explained the limited nature of that

exception:

> The fundamental-miscarriage-of-justice exception
> applies only in the "extremely rare" and "extraordinary
> case" where the petitioner is actually innocent of the
> crime for which he is imprisoned.    To support a
> colorable claim of actual innocence the petitioner must
> come forward with "new reliable evidence--whether it be
> exculpatory scientific evidence, trustworthy eyewitness
> accounts, or critical physical evidence--that was not
> presented at trial."  The petitioner must also
> establish that "it was more likely than not that no
> reasonable juror would have convicted him in light of
> the new evidence."

Because Harvey has offered no such evidence, he cannot

qualify for that exception to the procedural default doctrine.

So this opinion comes at last to the only door that remains

potentially open to Harvey on federal habeas:  the assertedly

ineffective assistance of his trial counsel.

### Ineffective Assistance of Trial Counsel

As stated earlier, the fact that the appellate rejection of

Harvey's ineffective-assistance-of-counsel claim can be viewed as

a merits determination brings that claim properly before this

Court.  That requires analysis of the claim under the criterion

set out in Section 2254(d)(1):  whether the Appellate Court's

adjudication of the claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of

the United States."

Williams v. Taylor, 529 U.S. 362, 404-05 (2000) teaches that

the "contrary to" and "unreasonable application of" phrases in

28

Section 2254(d)(1) have independent meanings. In that regard, a brief recap of the legal content of each is in order.

For purposes of Section 2254(d)(1) a state court's judgment is "contrary to...clearly established federal law, as determined by the Supreme Court" if it "applies a rule that contradicts the governing law" as decided by the Supreme Court or if it arrives at a result different from Supreme Court precedent when confronted with a set of materially indistinguishable facts (id. at 405-06). In contrast, a state court judgment that "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" falls within the "unreasonable application" clause (id. at 407-08).

Here counsel's Finley brief, upon which the Illinois Appellate Court relied for its decision, rightly assessed Harvey's ineffective assistance claim in light of Strickland, which constitutes clearly established federal law as decided by the Supreme Court and which squarely governs all claims of the ineffective assistance of counsel. Because the Appellate Court's decision thus relied on the correct legal rule, it is only the "unreasonable application" clause that could potentially apply to Harvey's claim.

To demonstrate that a state court's decision involved an unreasonable application of clearly established federal law, a prisoner must show that the court's application was "objectively

unreasonable" (Williams, 529 U.S. at 409)--it would not be enough that the court's legal determination was incorrect (id. at 410-11). In this instance, because the Appellate Court's statement of its conclusion omitted the analysis leading to that legal determination, this Court must engage in its own independent analysis of the ineffectiveness claim. And only if that evaluation were to reveal that the Appellate Court reached the incorrect result would it be necessary to consider whether the ultimate determination was also objectively unreasonable.

On then to a look at whether Harvey's ineffectiveness claim has substantive merit. Once again that implicates the two-part Strickland analysis of (1) assertedly deficient performance and (2) claimed prejudice to the defendant. Because "[t]he object of an ineffectiveness claim is not to grade counsel's performance," (466 U.S. 697), Strickland, id. teaches:

  If it is easier to dispose of an ineffectiveness claim
  on the ground of lack of sufficient prejudice, which we
  expect will often be so, that course should be
  followed.

And sure enough, that approach is fatal to Harvey's claim of his trial counsel's ineffectiveness.

In that respect Harvey challenges only his counsel's failure to strike three assertedly biased jurors. To show prejudice from such a failure, Harvey must show that the jurors were actually biased against him (Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995), citing Smith v. Phillips, 455 U.S. 209, 215 (1981);

accord, Hughes v. United States, 258 F.3d 453, 458 (6th Cir. 2001)). But the question of a juror's bias "is plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed" (Patton v. Yount, 467 U.S. 1025, 1036 (1984)). Because the trial court's refusal to strike a prospective juror for cause necessarily implicates a finding of that person's impartiality, that finding (like all trial court factual findings on habeas review) is entitled to a presumption of correctness to the extent that it is reasonably based on the record (Ellsworth v. Levenhagen, 248 F.3d 634, 638 (7th Cir. 2001)).

Here is the exchange on voir dire between Harvey's trial counsel Joan Hill-McClain ("Hill-McClain") and prospective juror Marilyn Martin ("Martin")(Ex. G 79):

Hill-McClain: And what is it that you know about the Nation of Islam?

Martin: Primarily what I hear of the Reverend Louis Farrakhan, and what I believe is some radical thinking, particularly in terms of white people.

Hill-McClain: Can you sit in judgment of a member of the nation of Islam?

Martin: I believe so, yes.

Hill-McClain: And can you put aside the biases that you think is [sic] espoused by Minister Farrakhan in order to judge Mr. Tyrone Muhammad?

31

Martin:        I believe so, yes.

Hill-McClain:  I need to know.  Can you?

Martin:        Yes.

Despite any possible uncertainty as to meaning that could have
stemmed from her use of "I believe so," Martin's final answer
clearly contained an "unwavering affirmation[ ] of impartiality"
(Thompson v. Altheimer & Gray, 248 F.3d 621, 627 (7th Cir. 2001))
sufficient to render reasonable the trial court's finding that
Martin was unbiased.

Potential juror Peter Devlin ("Devlin") initially expressed
uncertainty in response to questions from Assistant States
Attorney Rogers regarding his impartiality (Ex. G 45-46):

Rogers:     Do you have any feelings for or against
            the Nation of Islam that would prevent
            you [from] being a fair and impartial
            juror in this case, if you were to find
            he was a member of that?

Devlin:     I'm afraid I'd have to answer that
            question yes.  I hate to, but I'm
            afraid, in all honesty I have to.

Rogers:     Well, sir, let me ask you this question.
            If the only evidence in this case is
            that he's a member of the Nation of
            Islam and nothing else, would you feel
            compelled to have to find this defendant
            guilty of first degree murder?

Devlin:     No.

But Devlin also later asserted that he could be impartial in
response to a direct question from the court to him and to two of
the other members of the venire (Ex. G 62):

> The Court: I just want to ask each of you, the remaining three persons, can you be fair to Mr. Muhammad, sitting over here?
>
> A: Yes, Yes, Yes.

Although different responses on voir dire may be contradictory and hence ambiguous, if a prospective juror then provides a categorical affirmative answer to the question whether he can be fair (as Devlin, like Martin, ultimately did), the presumption that the trial judge "is best situated to determine competency to serve impartially" should not be disturbed (Patton, 467 at 1039). So the acceptance of Devlin's assurance was not unreasonable in light of the record.

Though Harvey also asserts that the presence of Margaret Kelly ("Kelly") on the jury prejudiced him, her voir dire responses revealed no bias against the Nation of Islam. Instead her answers to questions from Assistant States Attorney Murray revealed a possible bias against gang members (Ex. G 171):

> Murray: Also, we'll have gang members testify. We ask you to do the same thing with their testimony: Give them no greater nor less weight than any other witness. Could the two of you do that?
>
> Kelly: I don't know. I don't believe in gangs.
>
> Murray: I imagine if we asked everybody in this room, the would say that. What we'd ask you to do it look at the witness on the stand, and don't give them any greater weight because they are a gang member, and don't give their testimony an less weight because they are a gang member.

33

Kelly:      I'll do my best. I don't know.

Murray:     You feel just because of their
            membership in a gang, you would not
            listen to what they say? You would not
            believe anything they said?

Kelly:      I would listen to them, definitely.  I'm
            not sure about their credibility.

Kelly gave a similar response to a question from Harvey's counsel

(Ex. G 172):

Hill-McClain: Miss Kelly, you seem to be genuinely
              concerned with whether or not you could
              be fair and listen to the testimony of
              gang members.  And I want you to reflect
              again and decide whether or not you can
              believe that people who have been
              accused of very heinous crimes come to
              the stand and say something that you can
              believe.

Kelly:        I don't know.  I don't know.

     That testimony does call into question Kelly's ability to

consider the testimony of gang members impartially.  But the only

avowed gang member who testified in Harvey's trial was Darvon

Harris (Ex. I 192-93), and his testimony was for the prosecution

and directly implicated Harvey in the murder.  Thus Kelly's

tendency to disbelieve gang members could only have served to

help Harvey, and he cannot be heard to argue that her presence on

the jury prejudiced him.

     Harvey's inability to demonstrate the requisite

unreasonableness in the trial court's determination that jurors

Martin, Devlin and Kelly were impartial dooms his claim that his

34

trial counsel was constitutionally ineffective for failing to challenge those jurors. That being so, the Appellate Court's rejection of that claim was not an unreasonable application of Strickland. Accordingly Harvey's ineffectiveness claim has flunked the demanding standards set out in Section 2254(d)(1).

## Conclusion

Nine of Harvey's ten claims were procedurally defaulted in the Illinois courts. And because Harvey is unable to satisfy either the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the procedural default doctrine, those claims are barred from consideration in this Court. Finally, Harvey has also failed to show that his remaining claim was adjudicated by the Illinois courts in a manner that involved an unreasonable application of clearly established federal law. Harvey's Petition for federal habeas relief must be and is hereby denied.

Milton I. Shadur
Senior United States District Judge

Date: March 21, 2005

35